IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

LEGACY CONDOMINIUMS, INC.                                                PLAINTIFF

v.                                                CIVIL ACTION # 1:06cv1108-KS-MTP

LANDMARK AMERICAN INSURANCE COMPANY                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on the motion for partial summary judgment [# **62**] by the Defendant, Landmark American Insurance Company.  Because the Plaintiff has failed to raise a genuine issue of material fact as to any of the separate issues before the Court, the motion for partial summary judgment should be **granted**.

## I.  FACTUAL BACKGROUND

In this lawsuit, a condominium association seeks to recover damages for breach of contract and bad faith against its insurer.  The insurer argues that after paying all covered wind damage, any remaining damage to the building comes from wind-driven rain, a source of loss excluded from coverage.  The association claims that an exception to this exclusion reinstates coverage for water that entered when hurricane winds tore open the building's roof, making the observed losses compensable under the policy.

Legacy Condominiums, Inc. ("Legacy") owns and operates condominium buildings in Gulfport, Mississippi.  In April of 2005, Legacy completed the Legacy I Condominiums (the "building") a 14-story beachfront condominium featuring 103 units.  Just months after opening, Hurricane Katrina slammed into the Mississippi Gulf Coast, causing extensive damage to the building.

Legacy was insured under a commercial property policy sold by Landmark American Insurance Company ("Landmark").  The policy covered up to $27 million of potential damage to the building, subject to a 3% ($810,000) wind deductible.  The Landmark policy at issue was a land policy, as Legacy had also purchased a separate flood policy.

Under the Causes of Loss form, the Landmark policy specifically excluded "[f]lood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not." Def. Ex. A at 39 (Nov. 12, 2007).  Yet in the Limitations section of the exclusion, the contract adds that the exclusion is not applicable if "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters." Def. Ex. A at 42 (Nov. 12, 2007).

To date, Landmark has paid Legacy $706,181.98 for wind damage, after application of a $810,000 deductible.  In making this calculation, Landmark excluded "storm spray and/or...wind-driven rain which seeped into the building around undamaged windows and doors and other openings in the building envelope which were not created by direct wind damage during the storm." Def. Br. at 3 (Nov. 13, 2007).  Unsatisfied with this determination, Legacy filed suit against Landmark in November of 2006, alleging breach of contract and bad faith failure to investigate.

The parties' factual dispute now centers on exactly how water entered the structure above the flood line.[1]  Landmark claims that the remainder of uncompensated losses to the building are from wind-driven rain, an excluded loss under the policy.  Landmark does not dispute that it must pay for damage caused by "wind/water entering through three blown-off room chases." Def. Br. at 5 (Nov. 12, 2007). They do dispute, however, that they must compensate Legacy for "wind-driven rain and/or storm surge spray entering around undamaged windows and doors." *Id.* Precisely which category to place the observed damage to the building into forms the crux of the parties' factual dispute.

Landmark now moves for partial summary judgment on four separate issues.  First, it asks for a determination that the costs of completed repair supersede prior estimates for those same repairs.  Second, it asks the Court to hold that Legacy has the burden of proof in establishing a right to collect additional damages under the exception to the water exclusion.  Third, Landmark asks the Court to find that storm spray, as defined by the contract, is excluded from coverage and not compensable.  Finally, it seeks a determination that Legacy cannot hold Landmark liable for punitive damages as a matter of law.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

---

[1]Water damage below the flood line, conclusively caused by flooding, is covered under the separate flood policy and not an issue in this lawsuit.

R. Civ. P. 56(c). To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004).

If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on her pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ*., 485 F.3d 325, 331 (5th Cir. 2007).  The movant carries the burden of establishing the absence of any genuine issue of material fact. *Hetzel v. Bethlehem Steel Corp*., 50 F.3d 360, 362 (5th Cir. 1995).


### III.  ACTUAL COSTS

Landmark is entitled to summary judgment that where actual repairs have been completed on Legacy units, prior estimates of those repairs are irrelevant.  According to the terms of the policy, Landmark will pay "[t]he amount actually spent that is necessary to repair or replace the lost or damaged property." Def. Ex. A at 32 (Nov. 13, 2007).  Under the replacement cost provision, Landmark is not obligated to compensate Legacy "until the lost or damaged property

is actually repaired or replaced and unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." *Id.*

Although agreeing that actual repair costs supersede prior estimates of those costs, Legacy argues that not all actual repair costs are represented in the current tabulation. It asserts that individual unit owners, who are not parties to this action, were responsible for putting certain units back into their pre-storm condition. Pl. Rep. Br. at 12 (Nov. 30, 2007). It further argues that a number of units have not been repaired by their owners, and therefore the actual repair costs do not reflect the true cost of returning the units to their pre-storm condition. *Id.*

The Plaintiff attempts to spin the factual argument into a legal dispute where none exists. In areas where repairs have been completed, Legacy's estimates of anticipated repair costs are irrelevant. While there exists a factual question as to whether certain unit owners ever submitted costs for damages (and whether that damage was compensable), that does not alter the fact that repairs actually made render estimates for those same repairs irrelevant.[2] Landmark is entitled to summary judgment on that issue.

## IV.  WIND-DRIVEN RAIN

Landmark also asks for summary judgment on the issue that storm spray, as defined by the contract, is excluded and not compensable. Based on the terms of the Landmark policy,

---

[2] Two related issues not before the Court are the precise difference between "actual cash value" and "replacement costs" as defined by the contract and exactly which type of damages Legacy can seek for compensable losses that remain unpaid by Landmark. The Court makes no finding on these issues, as neither issue touches on the narrow holding of this order–that actual repairs made by Legacy make estimates for those same repairs immaterial.

"water" that is "driven by wind or not" is excluded from compensable losses. Def. Ex. A at 39 (Nov. 12, 2007). An anti-concurrent cause provision makes a covered loss non-compensable when acting concurrently with an excluded loss. Therefore, when water driven by wind combines with any other force to cause a loss, that loss is not compensable under the contract.

The Landmark policy explicitly excludes "rain, snow, sleet, ice, sand or dust, whether driven by wind or not" from those losses that are compensable. Def. Ex. A at 39 (Nov. 12, 2007). A limited exception to this exclusion, however, restores coverage when "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls, through which the rain, snow, sleet, ice, sand or dust enters." Def. Ex. A. at 42 (Nov. 12, 2007). In short, although water entry is generally excluded, proof that water entered the structure through a breach caused by wind would make those specific losses compensable.

In addition, the Landmark policy contains an anti-concurrent cause provision, which excludes covered losses when they act concurrently with non-covered losses. Within the list of exclusions, the policy states that "such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Def. Ex. A at 38 (Nov. 13, 2007). Although repeatedly attacked in other cases based on ambiguity, the Fifth Circuit recently upheld the anti-concurrent causation clause like the one at issue against arguments as to ambiguity and public policy. *See Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 436 (5th Cir. 2007). As discussed in *Leonard*, "if storm-surge flooding–an excluded peril–then inundate the same area that the rain damaged [then] the ensuing loss is excluded because the loss was caused concurrently or in sequence by the action of a covered and an excluded peril." *Id.* at 431.

In their briefing, Legacy disputes the proposition that the "wind driven rain" exclusion applies to their property.  Instead, they argue that once some amount of water has entered the building through a breach in the roof or wall, the wind driven rain and storm spray exclusions do not apply.  Legacy cites no legal or contractual authority for this position.

Although Legacy attempts to twist this into a legal issue, it remains a restatement of the principal factual dispute in the case.  The terms of the policy are clear, and they only allow coverage for water that entered the building through a breach caused by wind damage.  More importantly, if wind or another covered peril causes a breach that allows both rain and spray to enter and damage the same area, the loss is not compensable under the terms of the anti-concurrent cause provision and the holding of *Leonard*.  This factual dispute, as to whether any losses were caused by rain that entered the building through a breach caused by a covered loss, remains viable.  To the extent that Legacy attempts to argue that the storm spray exclusion clause is rendered invalid, ambiguous, or unenforceable because of possible wind damage, Landmark is entitled to summary judgment on those points.

## V.  BURDEN OF PROOF

Landmark is also entitled to summary judgment that Legacy has the burden of proof to prove damages within the exception of the wind-driven rain exclusion.  Mississippi law places the burden of proving the right to recovery under an insurance policy squarely on the insured.  *Tuepker v. State Farm Fire & Cas. Co.*, 2007 WL 3256829 (5th Cir. Nov. 6, 2007); *Britt v. Travelers Ins. Co.*, 566 F.2d 1020, 1022 (5th Cir. 1978).  Once an insured has established

damages resulting from a covered cause of loss, the insurer must show that an exclusion applies to avoid payment.

If the insurer shows an exclusion applies, the burden shifts back to the insured to establish an exception to the exclusion. Although the Mississippi Supreme Court has never spoken directly on point, authority from the Fifth Circuit supports the proposition that the burden returns to the insured. *See Guaranty Nat. Ins. Co. v. Vic Manufacturing Co.*, 143 F.3d 192, 194 (5th Cir. 1998). This district concluded the same on a slightly different fact scenario. *United States Fidelity & Guar. Co. v. B & B Oil Well Serv., Inc.*, 910 F. Supp. 1172, 1181 (S.D. Miss. 1995).[3] Other circuit courts addressing the issue have uniformly returned this burden to the insured. *See LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir.1997) (applying Florida law); *Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1020 (6th Cir.1995) (applying Michigan law); *St. Paul Fire and Marine Ins. v. Warwick Dyeing Corp.*, 26 F.3d 1195, 1199-1200 (1st Cir.1994) (applying Rhode Island law); *Northern Ins. Co. v. Aardvark Associates, Inc.*, 942 F.2d 189, 194-195  (3d Cir. 1991) (applying Pennsylvania law). As the Ninth Circuit reasoned, the "exception creates coverage where it would otherwise not exist and thus the insured's burden of proving coverage extends to proof of this exception." *Aeroquip Corp. v. Aetna Cas. & Sur. Co., Inc.*, 26 F.3d 893, 895 (9th Cir. 1994).

Because the exception creates coverage within the otherwise excluded wind-driven rain, the burden of proof is properly placed on the Plaintiff. Just as Legacy had the burden to show

---

[3] Applying the burden of proof in the context of a qualified pollution exclusion, this district noted that "[t]hough the general rule is that the insurer bears the burden of proof on the applicability of exclusionary provisions, such as pollution exclusions, most courts have held that the burden is on the insured to prove that the sudden and accidental exception in the qualified pollution exclusion applies." *United States Fidelity & Guar. Co. v. B & B Oil Well Serv., Inc.,* 910 F. Supp. 1172, 1181 (S.D. Miss. 1995).

that it had the right to recover in the first instance, it also must show that it has the right to recover for damages it now asserts were unpaid.  Legacy has not raised a genuine issue of fact, and Landmark is entitled to summary judgment on that issue.


## VI.  PUNITIVE DAMAGES

Finally, Landmark is entitled to summary judgment that it cannot be held liable for punitive damages.  Mississippi places a duty on insurers to properly investigate the claims of their policyholders. *Pilate v. Amer. Federated Ins. Co.*, 865 So. 2d 387, 395 (Miss. App. 2004). Mississippi law recognizes a claim of bad faith refusal of insurance coverage, and a corresponding chance to recover punitive damages, if a plaintiff can prove that (1) there was no arguable or legitimate reason to deny coverage and (2) the insurer acted willfully, maliciously, or with gross and reckless disregard for the insured's rights. *Liberty Mutual Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003).  Simply showing there is no arguable reason to deny coverage is insufficient to place a punitive damages claim before the jury. *Murphree v. Federal Ins. Co.*, 707 So. 2d 523, 530 (Miss. 1997).

The award of punitive damages under Mississippi law requires a plaintiff to prove "by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65 (1972). Punitive damages are recoverable in a breach of contract case only "where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes

an independent tort." *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1095 (Miss. 1996).  If the insurer had an arguable reason to deny coverage, punitive damages are impermissible. *Pioneer Life Ins. Co. of Ill. v. Moss*, 513 So. 2d 927, 929 (Miss. 1987).  The Mississippi Supreme Court has defined an "arguable reason" as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort." *Caldwell*, 686 So. 2d at 1096.[4]

Nothing in the summary judgment record suggests a cognizable right by Legacy to punitive damages against Landmark.[5]  Although factual issues as to damages and causation remain viable, there is no evidence that Landmark has acted with the malicious or fraudulent intent needed to support a punitive damage award.  Based on the evidence currently in the record, there exists an arguable reason for Landmark to deny coverage for damage plainly outside the terms of the contract, and the Plaintiffs have done nothing to show that Landmark has acted with a gross disregard for their rights.

## VII. CONCLUSION

The principal issue disputed in this case is the method by which water damaged the

---

[4]The Court previously defined an arguable reason as "one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts." *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 S. 2d 833, 851 (Miss. 1985).

[5]Legacy relies exclusively on its argument that the Landmark adjuster's "less than 3.6 minute per unit inspection" was insufficient to properly categorize the damage. Pl.'s Res. Br. at 12 (Nov. 30, 2007).  Even if this were enough to establish a negligent investigation, that alone is insufficient to assess punitive damages against Landmark.  There is no evidence that Landmark acted maliciously or with a gross disregard for Legacy's rights, and hence no genuine issue of material fact to survive summary judgment.

Legacy building during Hurricane Katrina.  Because there is an exception to the particular water exclusion, Legacy regains the burden of proof to show their right to recover because an exception to the exclusion applies.  To the extent actual repairs have been completed, Legacy's recovery is limited to the amount spent on those repairs, and cannot base its recovery on estimates that have been superseded by actual work.  Finally, there is no genuine issue of fact in the record that would permit Legacy to recover punitive damages against Landmark.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion for partial summary judgment [# 62] is **granted.**

SO ORDERED AND ADJUDGED on this, the 4th day of January, 2008.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE